IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ADAM ROEDER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>AFFORDABLE CARE, LLC, a North Carolina company,<br><br>*Defendant.* | Case No. 5:25-cv-788<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

**CLASS ACTION COMPLAINT**

Plaintiff Adam Roeder ("Plaintiff Roeder" or "Roeder") brings this Class Action Complaint and Demand for Jury Trial against Defendant Affordable Care, LLC ("Defendant Affordable Care" or "Affordable Care") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing prerecorded calls to wrong numbers.

Affordable Care operates a centralized automated calling system that places prerecorded appointment reminder calls on behalf of more than 400 Affordable Dentures & Implants dental practices nationwide. Because Affordable Care fails to verify that telephone numbers in its database remain assigned to actual patients, its system inevitably calls persons who have never been patients and who never provided their numbers or consent. Even when recipients notify Affordable Care or its affiliated practices that they are not patients and request to stop receiving calls, the calls continue.

Plaintiff seeks injunctive and monetary relief on behalf of himself and all persons who received prerecorded calls from Affordable Care to telephone numbers not assigned to patients. Plaintiff Roeder, for this Complaint, alleges as follows upon personal knowledge as to himself and

his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Adam Roeder is a resident of West Henrietta, New York.

2. Defendant Affordable Care is a North Carolina registered company headquartered in Morrisville, North Carolina. Defendant Affordable Care conducts business throughout the US and within this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant has its headquarters in this District and makes calls from this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant has its headquarters in this District, and the wrongful conduct giving rise to this case was directed by Defendant from this District.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term in 2020, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants,* No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 3.7 billion robocalls were placed in October 2025 alone, at a rate of 120.6 million per day. www.robocallindex.com (last visited November 23, 2025).

11. The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

## COMMON ALLEGATIONS

***Affordable Care's DSO Structure***

14. Affordable Care operates as a Dental Support Organization ("DSO"), a business structure that allows non-dentist corporations to effectively control dental practices without technically owning them—thereby complying with state "corporate practice of dentistry" laws that prohibit non-dentists from owning dental practices.

15. Under this structure, while each Affordable Dentures & Implants practice is nominally owned by a licensed dentist organized as a Professional Corporation, Affordable Care controls virtually all non-clinical aspects of the business, including: the real estate or master lease; the dental equipment and fixtures; the brand name; the dental laboratory; and the patient communication systems. In exchange, Affordable Care receives substantial fees from the dentist-owned practices, typically structured as a percentage of revenue pursuant to long-term Management Services Agreements ("MSAs").

16. Affordable Care's DSO structure has been judicially recognized. See Affordable Care, LLC v. Jeffrey Lee Martin, DDS, No. 54,286-CA (La. App. 2 Cir. Apr. 13, 2022) (describing Affordable Care as "a North Carolina Corporation [that] provides management and dental laboratory services to dental practices nationwide" pursuant to Management Services Agreements, Dental Laboratory Services Agreements, and Subleases).

17. Affordable Care currently provides DSO services to approximately 425 dental practices operating under the Affordable Dentures & Implants brand in 42 states throughout the United States.

18. In June 2021, private equity firm Harvest Partners acquired Affordable Care from Berkshire Partners for approximately $2.7 billion, reflecting the substantial value of Affordable Care's nationwide DSO network.

***Affordable Care's Centralized Patient Communications System***

19. Critically, Affordable Care—not the individual dental practices—operates centralized patient communication systems that place automated appointment reminder calls to patients across all 400+ locations nationwide. The individual dental practices, including Affordable Dentures Rochester, have no ability to independently control, modify, or stop these calls.

20. In October 2024, Affordable Care publicly announced that it had selected Weave as its enterprise-wide "platform of record for patient communications" across all supported practices. According to Affordable Care, this platform "automates reminders" and has reduced "time spent playing phone tag" across its network.

21. Affordable Care has also deployed AI-powered voice technology through Observe.AI to handle patient calls at scale. According to an Observe.AI case study featuring Affordable Care's Patient Service Director, Affordable Care uses "VoiceAI Agents" to conduct automated outbound outreach, including calls to "check in with no-show patients" and remind patients about appointments—precisely the type of prerecorded calls at issue in this case.

22. According to its publicly available Communications Policy at AffordableDentures.com, Affordable Care expressly acknowledges that its calls "may be generated by using automatic telephone dialing systems and or artificial voice or prerecorded message."

> By agreeing to this Communications Policy and by providing your mobile phone number to us or to one of our Affiliated Dental Practices, YOU AGREE, you also consent to receive Appointment Reminder and Survey Request text messages from us and our business associates. You will not receive more than three (3) Appointment Reminder text messages a week, (1) Forms link text message prior to a visit to one of our Affiliated Dental Practices, or more than one (1) Survey Request text message, following a visit to one of our Affiliated Dental Practices. Message and data rates may apply. You may opt out or unsubscribe from Our text messages at any time by texting any of the following to the Affiliated Dental Practice's direct phone number from which texts are received: "STOP," "END," "CANCEL," "UNSUBSCRIBE," or "QUIT."
>
> YOU UNDERSTAND AND AGREE THAT CALLS AND TEXT MESSAGES MAY BE GENERATED BY USING AUTOMATIC TELEPHONE DIALING SYSTEMS AND OR ARTIFICIAL VOICE OR PRERECORDED MESSAGE. YOUR CONSENT TO RECEIVE CALLS AND TEXT MESSAGES IS NOT REQUIRED TO MAKE A PURCHASE OR TO ORDER A SERVICE. [3]

23. Although the calls at issue display local practice phone numbers such as 585-663-7820, the calls originate from Affordable Care's centralized system, are automated by Affordable Care's chosen platforms (Weave and Observe.AI), and use prerecorded messages standardized by Affordable Care.

24. Because the automated calling system is controlled centrally by Defendant Affordable Care—not by the individual practices—local practice employees lack the ability to remove telephone numbers from the calling list or stop the automated calls entirely on their own. This explains why, despite Plaintiff's explicit request to an Affordable Dentures Rochester employee that his number be removed, the prerecorded calls continued unabated.

***Calls to Wrong Numbers and Non-Patients***

25. Given the volume of automated calls placed by Affordable Care across 400+ practices—numbering in the hundreds of thousands annually—and the inevitable reassignment and turnover of cellular telephone numbers, Affordable Care's centralized calling system inevitably reaches substantial numbers of wrong numbers, including persons who have never been patients of any Affordable Dentures & Implants practice.

[3] https://www.affordabledentures.com/communications-policy

26. On information and belief, Affordable Care does not utilize the FCC's Reassigned Numbers Database or implement any other systematic verification to confirm that telephone numbers in its calling database remain assigned to the patients who originally provided them.

27. Any healthcare message exemption under the TCPA applies only to calls made to actual patients of the healthcare provider. Calls placed to wrong numbers—including to consumers who have never been patients of any Affordable Dentures & Implants practice—do not qualify for any healthcare exemption because no patient relationship exists.

***This Action***

28. Defendant Affordable Care places prerecorded calls through its centralized automated system to consumers who never provided consent to receive such calls, including consumers like Plaintiff who have never been patients of any Affordable Dentures & Implants practice.

29. In response to these calls, Plaintiff Roeder brings this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, and an award of statutory damages to the members of the Class and costs.

**PLAINTIFF ROEDER'S ALLEGATIONS**

30. Plaintiff Roeder is the sole owner and user of his cell phone number ending in 3860.

31. He has had this cell phone number for six years, since 2019.

32. Plaintiff Roeder's cell phone is assigned to a cellular telephone service.

33. On October 18, 2025 at 11:05 AM, Plaintiff Roeder received a pre-recorded call to his cell phone from 585-663-7820 that stated:

> "Hello Linda this is Affordable Dentures and Implants calling. We are sorry you missed your appointment. If you are ready to reschedule, please call us as 585-663-7820. We look forward to seeing you soon."

34. Linda was the name of the previous owner of Plaintiff's cell phone number.

35. Plaintiff Roeder could tell that this call was pre-recorded because there was dead silence for a few seconds before the message played. The voice of the message sounds robotic with unnatural intonation and cadence. The message provides no option for Plaintiff to speak to a live agent, and directs Plaintiff to call 585-663-7820.

36. 585-663-7820 is the main phone number for Affordable Dentures Rochester:



[4]

37. On October 22, 2025 at 12:33 PM, Plaintiff Roeder received a 2nd pre-recorded call from 585-663-7820 to his cell phone number.

38. Like the previous call, when Plaintiff answered the call, there was an audible pause before the message began to play.

39. The portion of the message that Plaintiff heard was identical to what he heard in the previous call.

40. Plaintiff Roeder immediately called 585-663-7820 back on October 22, 2025 at 12:33 PM.

41. Plaintiff Roeder spoke with a live employee at Affordable Dentures Rochester and informed her that he was receiving calls from them calling the wrong phone number.

42. Plaintiff Roeder asked the employee to remove his phone number from the call list.

43. The employee claimed that Plaintiff's phone number was removed from the calling list.

---

[4] https://www.affordabledentures.com/locations/ny/rochester

44. Despite letting the Affordable Dentures Rochester know that they were calling the wrong number, Plaintiff Roeder received a 3rd call on November 7, 2025 at 1:37 PM from 585-663-7820 to his cell phone.

45. Plaintiff did not answer this call, but a pre-recorded voicemail was left that is identical to the pre-recorded message that Plaintiff would hear when answering the calls, stating:

> "Hello Linda this is Affordable Dentures and Implants calling. We are sorry you missed your appointment. If you are ready to reschedule, please call us as 585-663-7820. We look forward to seeing you soon."

46. On November 13, 2025 at 11:03 AM, Plaintiff Roeder received a 4th call to his cell phone from 585-663-7820.

47. When Plaintiff Roeder answered this call, there was an audible pause before the message that is described above was played again, identical to all of the previous calls.

48. On November 15, 2025 at 11:02 AM, Plaintiff Roeder received a 5th call to his cell phone from 585-663-7820.

49. Plaintiff did not answer this call, but a pre-recorded voicemail was left that is identical to the pre-recorded messages that are described above, stating:

> "Hello Linda this is Affordable Dentures and Implants calling. We are sorry you missed your appointment. If you are ready to reschedule, please call us as 585-663-7820. We look forward to seeing you soon."

50. Plaintiff Roeder has never been a patient or customer of the Affordable Dentures Rochester, has never scheduled an appointment with them, and has never provided his cell phone number to Affordable Dentures Rochester or the Defendant.

51. Plaintiff Roeder never provided consent to the Defendant to receive pre-recorded calls to his cell phone.

52. The unauthorized telephone calls and voicemails that Plaintiff received from or on behalf of the Defendant have harmed Plaintiff Roeder in the form of annoyance, nuisance, and invasion of privacy, occupied his phone memory, and disturbed the use and enjoyment of his phone.

53. Plaintiff Roeder listened to the pre-recorded voicemails that he received from the Defendant.

54. Seeking redress for these injuries, Plaintiff Roeder, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

**CLASS ALLEGATIONS**

55. Plaintiff Roeder brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Wrong Number Class**: All persons throughout the United States (1) to whom Defendant Affordable Care placed, or caused to be placed, a call, (2) directed to a cellular telephone number, (3) that was not assigned to any current or former patient of any Affordable Dentures & Implants practice or their authorized representative at the time of the call, (4) using an artificial or prerecorded voice, (5) from four years prior to the filing of this Complaint through the date of class certification.

56. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Roeder anticipates the need to amend the Class definition following appropriate discovery.

57. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

58. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether the Defendant placed pre-recorded voice message calls to Plaintiff and members of the Wrong Number Class without the prior express consent required by the TCPA;

(b) whether the calls constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

59. **Adequate Representation**: Plaintiff Roeder will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Roeder has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Roeder and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Roeder nor his counsel have any interest adverse to the Class.

60. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate.

Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Roeder. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Roeder and the Wrong Number Class)**

61. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

62. The Defendant placed unwanted telephone calls to Plaintiff Roeder and the other members of the Wrong Number Class using a pre-recorded voice message.

63. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Wrong Number Class.

64. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of the Defendant's conduct, Plaintiff and the other members of the Wrong Number Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of statutory damages and costs;

c) An order declaring that the Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring the Defendant to cease all pre-recorded calling activity that is done without proper consent, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Roeder requests a jury trial.

ADAM ROEDER, individually and on behalf of all others similarly situated,

DATED this 26th day of November 2025.

By: /s/ *Ryan Duffy*
Ryan Duffy
The Law Office of Ryan P. Duffy, PLLC
1213 W. Morehead Street
Suit 500, Unit #450
Charlotte, North Carolina 28208
ryan@ryanpduffy.com
Telephone: (704) 741-9399

*Local Counsel for Plaintiff and the putative Class*

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*